Filed/Docketed
June 26, 2006

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

IN RE:

**JOSEPH MATHEW JANES and
SHELLEY RAYE JANES,**

**Case No. 05-18544-M
Chapter 7**

                  **Debtors.**

---

**HENRY B. MASON, JR. and
TAMI L. MASON,**

                  **Plaintiffs,**

    **v.**

**Adv. No. 06-01053-M**

**JOSEPH MATHEW JANES and
SHELLEY RAYE JANES,**

                  **Defendants.**

## MEMORANDUM OPINION

THIS MATTER comes before the Court on cross-motions for summary judgment.  The
Plaintiffs, Henry B. Mason and Tami L. Mason ("Plaintiffs" or the "Masons") obtained a judgment
in Washington state court against Joseph Mathew Janes ("Mr. Janes") and Shelley Janes ("Mrs.
Janes"), the Defendants herein ("Defendants" or the "Janes").  After the state court judgment was
entered, the Janes sought bankruptcy relief.  The Masons have filed a complaint seeking to have the
judgment entered by the Washington state court held non-dischargeable.  They contend that the state
court judgment contains findings and conclusions which support their claim, and that those findings
and conclusions are binding upon this Court under the doctrine of collateral estoppel, or issue
preclusion.  The Janes disagree, and contend that not only should summary judgment be denied to
the Masons, but that summary judgment should be entered dismissing this adversary proceeding

with prejudice against Shelley Janes.  The following findings of fact and conclusions of law are made pursuant to Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52.

## Jurisdiction

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b).[1] Reference to the Court of this adversary proceeding is proper pursuant to 28 U.S.C. § 157(a).  This is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(I).

## Burden of Proof

Exceptions to discharge are to be narrowly construed in favor of the debtor.[2]  The burden of proof in this action is upon the creditor to establish that the debt is nondischargeable by a preponderance of the evidence.[3]

## Summary Judgment Standard

Summary judgment is proper where "'there is no genuine issue as to any material fact.'"[4] Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[5]  Summary

---

[1]  Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

[2]  *See Driggs v. Black (In re Black)*, 787 F.2d 503, 505 (10th Cir. 1986), *abrogated on other grounds by Grogan v. Garner*, 498 U.S. 279 (1991); *see also AT&T v. Herrig (In re Herrig),* 217 B.R. 891 (Bankr. N.D. Okla. 1998).

[3]  *See Grogan*, 498 U.S. at 279.

[4]  *Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986)).

[5]  Fed. R. Civ. P. 56(c), made applicable to this proceeding by Fed. R. Bank. P. 7056.

judgment is only appropriate if the facts set forth by the movant are properly supported with admissible evidence and affirmatively show that the movant is entitled to judgment as a matter of law.[6]

### Findings of Fact

This Court's findings of fact are taken directly from the findings of fact and conclusions of law entered in a judgment of the Superior Court of Washington for Skagit County (the "State Court Judgment"), entered January 18, 2005, in a case styled, *Henry B. Mason, Jr. and Tami L. Mason, husband and wife, Plaintiffs vs. Joseph M. Janes and Jane Doe Janes, husband and wife, d/b/a Matt Janes Construction, and Gulf Insurance Company, Bond Number BE2639834, Defendants.*[7]

### STATE COURT FINDINGS OF FACT

1. In December 2002 and January 2003, Henry and Tami Mason (the Masons) contracted with Joseph M. Janes (Matt Janes) of Matt Janes Construction for construction of a home in Skagit County, Washington.

2. The contract price was $216,632.20.

3. $181,632.20 of the contract was to be paid in cash.

4. The contract price included certain real property owned by the Masons in the Dewey Beach area of Fidalgo Island, Skagit County with an agreed value of $35,000.

---

[6] *See* Fed. R. Civ. P. 56(e).

[7] *See Plaintiffs Ex. A.* The parties did not offer any additional facts for this Court to consider except those contained in the State Court Judgment. The parties do not dispute that this Court is barred under the doctrine of collateral estoppel from relitigation of any factual issues which were actually litigated and necessarily decided by the Washington state court. Therefore, the Court adopts the Washington state court's findings and conclusions for purposes of these motions.

5.      As part of the contract, the Masons would transfer the Dewey Beach property they owned to Matt Janes.

6.      Matt Janes Construction was a sole proprietorship construction company registered as a Construction Contractor with the Washington Department of Labor and Industries.

7.      At all times pertinent to the construction, Gulf Insurance Company Bond number BE2639834 was in effect for Matt Janes Construction.

8.      Matt Janes Construction failed to provide a "Notice to Customer" lien disclosure statement to the Masons.

9.      Construction on the project was substantially completed by May 9, 2003.

10.      While substantially complete, Matt Janes Construction did not complete all work under the contract.

11.      The Masons paid $180,309 to Matt Janes Construction for the contract work accomplished.

12.      Matt Janes Construction was obligated to pay subcontractors and suppliers for the work and materials provided for the project.

13.      Matt Janes Construction failed to pay various subcontractors and suppliers for work and materials provided for the project.

14.      In failing to pay subcontractors and suppliers for the contract work, Matt Janes knew that liens were substantially certain to be filed by those subcontractors and suppliers who had not been paid.

15.      Eight liens were filed by subcontractors or suppliers between April 29 and August 5, 2003.

4

16.     Four of the eight liens were filed while Matt Janes Construction was still on the job.

17.     In addition to payments to Matt Janes Construction, the Masons paid $60,494 directly to subcontractors and suppliers who had not been paid by Matt Janes Construction.

18.     The Masons total payments to Matt Janes Construction and to subcontractors and suppliers were $24,171 more than the contract price.

19.     The Masons are entitled to damages of $3,750 as credits for work not completed by Matt Janes Construction.

20.     The Masons total damages for the contract work are $27,921.

21.     The Masons did not convey the Dewey Beach property to Matt Janes.

22.     Matt Janes Construction is entitled to $17,313 for extra work completed which was not within the basic contract price.

23.     Considering the sums above, the Masons' net damages for the contract work are $10,608.

24.     The court's memorandum opinion dated 12/1/04 is incorporated herein.[8]

## STATE COURT CONCLUSIONS OF LAW

1.     This Court has jurisdiction to decide this matter, pursuant to RCW 2.08.010 and RCW 18.27.040.

2.     Venue is proper under RCW 18.27.040(4) and because all matters involved in this dispute occurred in Skagit County.

3.     Matt Janes and Matt Janes Construction breached their contract with the Masons by

---

[8] This memorandum opinion was not made part of the record submitted to this Court and played no part in the Court's decision.

failing to complete work under the contract for the agreed price and by not paying subcontractors and suppliers for work accomplished under the contract.

4.       The Masons breached their contract with Matt Janes Construction by failing to convey the Dewey Beach real property.

5.       In accordance with the findings above, the Masons are entitled to judgment in the amount of $10,608 for breach of contract.

6.       Matt Janes failure to provide a "Notice to Customer" concerning liens to the Masons violated provision 18.27.114 of the Contractor Registration Act.

7.       Pursuant to RCW 18.27.350, Matt Janes violation of RCW 18.27.114 constitutes a violation of the Consumer Protection Act.

8.       The Consumer Protection Act at RCW 19.86.090 provides for increased damages of treble the actual damages, up to a maximum of $10,000 for violations of the Act.

9.       Consumer Protection Act additional damages of $10,000 are proper is [sic] this action.

10.      Matt Janes and Matt Janes Construction's failure to pass on payments received to subcontractors and suppliers constitutes the intentional tort of conversion, pursuant to *Maynard Inv. Co., Inc. v. McCann*, 77 Wn.2d 616 (1970) and [*Washington*] *v. Joy*, 121 Wn.2d 333 (1993).

11.      The amount converted was concurrent with and not additional to the breach of contract damages laid out above.

12.      The Masons are not liable for negligent misrepresentation for failing to disclose a balance they owed on the Dewey Beach property.

13.     Gulf Insurance Company, as surety for Matt Janes Construction under bond number BE2639834 is liable for Matt Janes Construction's breach of contract.

15.     Pursuant to the Contractor Registration Act and the Consumer Protection Act, the Masons as prevailing parties in this action are entitled to attorney fees and costs in the amount of $18,840 attorney fees, $510.09 allowable costs.[9]

There is no evidence that the State Court Judgment was ever appealed from.  The Court considers the State Court Judgment to be a final judgment for purposes of this decision.

The Janes filed a petition for relief under Chapter 7 of the United States Bankruptcy Code on October 13, 2005.  The Masons timely filed this adversary proceeding to determine the dischargeability of the State Court Judgment.  The issues pertaining to both parties' motions for summary judgment have now been fully briefed, and the matter is ripe for decision.

To the extent the "Conclusions of Law" contain any items which should more appropriately be considered "Findings of Fact," they are incorporated herein by this reference.

## Conclusions of Law

### *Collateral Estoppel/Issue Preclusion*

The Plaintiffs' motion for summary judgment is premised upon the doctrine of collateral estoppel, or issue preclusion.[10]  The Masons contend that every issue of fact necessary to a finding of non-dischargeability has been determined in the State Court Judgment, and may not be relitigated here.  The Janes do not dispute the applicability of the collateral estoppel doctrine; instead, they

---

[9] *Plaintiff's Ex. A, Docket No.* 12-3.  The conclusions of law did not include an item No. 14.

[10] These terms are used interchangeably throughout this Memorandum Opinion.

assert that the findings contained in the State Court Judgment are insufficient to support a ruling that

the State Court Judgment should not be discharged in the Janes' bankruptcy case.

The Bankruptcy Appellate Panel for the Tenth Circuit recently summarized the collateral

estoppel doctrine:

> In bankruptcy court the collateral estoppel doctrine may apply in determining the dischargeability of a debt. When a federal court reviews the preclusive effect of a state court judgment under the collateral estoppel doctrine, it is guided by the mandates of the Full Faith and Credit Act, 28 U.S.C. § 1738, which codifies the Full Faith and Credit Clause of the Constitution, Art. IV, § 1. The Full Faith and Credit Act directs a federal court to look to the preclusion law of the state in which the judgment was rendered. It requires the federal court to "'give the same preclusive effect to a state-court judgment as another court of that State would give.'" While ultimately, a bankruptcy judge determines whether a debt is nondischargeable under § 523, a state court judgment may preclude the relitigation of settled facts under the collateral estoppel doctrine.[11]

As the State Court Judgment was entered in Washington, the Washington law of issue preclusion

applies.  The elements of issue preclusion under Washington law are:

(1) the issue decided in the prior adjudication is identical with the one presented in

the second action;

(2)  the prior adjudication must have ended in a final judgment on the merits;

(3)  the party against whom the plea is asserted was a party or in privity with the

party to the prior adjudication; and

(4) application of the doctrine does not work an injustice.[12]

Each of these elements must be present in order for the doctrine to apply to this adversary

---

[11]  *Hill v. Putvin (In re Putvin)*,  332 B.R. 619, 625 (10th Cir. BAP 2005) (footnotes omitted).

[12]  *Stephens v. Bigelow (In re Bigelow)*, 271 B.R. 178, 183 (9th Cir. BAP 2001) (citing *Nielson v. Spanaway Gen. Med. Clinic, Inc.,*  956 P.2d 312, 316 (Wash. 1998)).

proceeding.

The Defendants do not dispute that these elements are satisfied. The State Court Judgment is a final judgment, made on the merits after trial. All of the parties to the present action were parties to the state court action.[13] There has been no argument that application of the doctrine in this adversary proceeding would somehow create an injustice to any of the parties. The Court concludes that, to the extent issues decided in the state court action are identical with issues presented in this action, each of the elements of collateral estoppel are met.

### *Dischargeability of the Obligations of Mrs. Janes*

All of the findings contained in the State Court Judgment make specific reference to Mr. Janes individually, or to his company, Matt Janes Construction. The Washington state court determined that Matt Janes Construction was a sole proprietorship. There is nothing in the record to indicate that Mrs. Janes had any ownership interest in or was involved in any way in the day-to-day operation of Matt Janes Construction. Construing these facts in the light most favorable to Mrs. Janes, there is nothing to support a judgment holding that she had any involvement in the business.

Plaintiffs assert that the State Court Judgment squarely lists Mrs. Janes as a defendant and establishes her liability for the judgment. While this is correct, it is incorrect to equate Mrs. Janes's liability under the State Court Judgment with non-dischargeability of the debt created by that judgment. Although the State Court Judgment lists Mrs. Janes indirectly as a defendant, (as "Jane Doe Janes", wife of Joseph M. Janes), it does not otherwise make any findings or conclusions with respect to her, except to note that she appeared at trial personally and through counsel. While the State Court Judgment conclusively establishes the liability of Mrs. Janes to the Masons, it is silent

---

[13] The effect of the judgment with respect to Mrs. Janes is discussed *infra*.

when it comes to facts relating to the dischargeability of that debt. The issue of dischargeability is left for this Court to determine.[14]  This issue remains unresolved.[15]  Therefore, the motions of both parties seeking summary judgment as to Mrs. Janes must be denied.

### *Dischargeability of the Obligations of Mr. Janes*

In the State Court Judgment, the court awarded the Masons actual damages of $10,608 for both the breach of contract and conversion claims.  In addition, the court awarded the Masons $10,000 in additional damages, $18,840 in attorney fees, and $510.09 in allowable costs pursuant to the Washington Consumer Protection Act.  The dischargeability of the actual damages will be addressed separately from the award of additional damages, attorney fees, and costs.

*Actual Damages*

The Masons assert that the actual damages should be found nondischargeable under both §§ 523(a)(4) and (a)(6).  Section 523 (a)(6) provides that:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt —
>
>> (6)  for willful and malicious injury by the debtor to another entity or the property of another entity.

 "Nondischargeability under 523(a)(6) requires proof of two elements–that the injury is both willful and malicious."[16]  Analysis begins with the statement by the United States Supreme Court that "the

---

[14]  *See Klemens v. Wallace (In re Wallace)*, 840 F.2d 762, 764 (10th Cir. 1988).

[15]  While the State Court Judgment does not establish that she was in any way involved in these business dealings, it also does not preclusively establish that she was NOT involved. Therefore the issue of her involvement in the business and the dischargeability of the debt as to her remains open for resolution by this Court.

[16]  *In re Shore*, 317 B.R. 536, 542 (10th Cir. BAP 2004) (citing *Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004)).

word 'willful' in [§ 523](a)(6) modifies the word 'injury,' indicating that non-dischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury."[17] In the Tenth Circuit, in order for conduct to be willful under § 523(a)(6), "the debtor must 'desire . . . [to cause] the consequences of his act or . . . believe [that] the consequences are substantially certain to result from it.'"[18]  The term "malicious" requires proof "that the debtor either intend the resulting injury or intentionally take action that is substantially certain to cause the injury."[19]  The test for "malicious" is a subjective one: "the court must determine what the debtor knew or intended with respect to the consequences of his actions."[20]

The court in *In re Longley* considered whether a debt for conversion of property was dischargeable under § 523(a)(6).    That court noted:

> Although the facts in *Geiger* did not concern a debtor's conversion of collateral, the text of the opinion reaffirms that conversion can, under certain circumstances, give rise to a non-dischargeable debt pursuant to § 523(a)(6). The Court specifically referred to its earlier decision under the Bankruptcy Act, *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934), in which it had held that "a willful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances. There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without willfulness or malice." *Davis*, 293 U.S. at 332, 55 S.Ct. 151.

> In light of *Geiger,* the standard for willful under § 523(a)(6) appears to be the same for conversion as for any other injury; to be willful, the debtor must intend that conversion of the collateral injure the creditor or the creditor's lien interest. However, *Geiger* does not address the evidence by which intent to injure can be established. We believe that as to proof of intent to injure in the context of conversion of secured

---

[17]  *Kawaauhau v. Geiger*, 523 U.S. 57, 64 (1998).

[18]  *In re Moore*, 357 F.3d at 1129  (quoting *Mitsubishi Motors Credit of Am., Inc. v. Longley (In re Longley)*, 235 B.R. 651, 657 (10th Cir. BAP 1999)).

[19]  *Id.* (quoting *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1164 (11th Cir. 1995)).

[20]  *In re Shore*, 317 B.R. at 542.

property, *Posta*[21] and *Pasek*[22] remain instructive. Intent may be established by either direct or indirect evidence. *Posta,* 866 F.2d at 367. Willful injury may be established by direct evidence of specific intent to harm a creditor or the creditor's property. *Id.* <u>Willful injury may also be established indirectly by evidence of both the debtor's knowledge of the creditor's lien rights and the debtor's knowledge that the conduct will cause particularized injury.</u> *Pasek,* 983 F.2d at 1527. *See also* Restatement (Second) of Torts § 8A (1965) ("The word 'intent' is used throughout the Restatement of this Subject to denote that the actor desires to cause consequences of his act, <u>or that he believes that the consequences are substantially certain to result from it</u>.").[23]

The *Longley* court found that, while conversion of collateral may give rise to a claim of non-dischargeability under § 523(a)(6), a specific intent to injure the collateral position of the creditor must be shown.

The issue before the Court is whether the State Court Judgment awarding damages for breach of contract and conversion constitutes a debt for a willful and malicious injury to the Masons. The Washington state court made the following relevant findings of fact and conclusions of law:

1. Matt Janes Construction was obligated to pay subcontractors and suppliers for the work and materials provided for the project. (Finding of Fact No. 12).

2. Matt Janes Construction failed to pay various subcontractors and suppliers for work and materials provided for the project. (Finding of Fact No. 13).

3. In failing to pay subcontractors and suppliers for the contract work, Matt Janes knew liens were substantially certain to be filed by those subcontractors and suppliers who had not been paid. (Finding of Fact No. 14).

4. Eight liens were filed by subcontractors or suppliers between April 29 and August 5, 2003. (Finding of Fact No. 15).

---

[21] *C.I.T. Fin. Servs., Inc. v. Posta (In re Posta)*, 866 F.2d 364 (10th Cir. 1989), *overruled on other grounds by Geiger*, 523 U.S. at 61.

[22] *Dorr, Bentley & Pecha (In re Pasek)*, 983 F.2d 1524 (10th Cir. 1993), *overruled on other grounds by Geiger*, 523 U.S. at 61.

[23] *In re Longley*, 235 B.R. at 657 (emphasis and footnotes added).

5.  Matt Janes and Matt Janes Construction breached their contract with the Masons by failing to complete work under the contract for the agreed price and by not paying subcontractors and suppliers for work accomplished under the contract. (Conclusion of Law No. 3).

6.  In accordance with the findings above, the Masons are entitled to judgment in the amount of $10,608 for breach of contract. (Conclusion of Law No. 5).

7.  Matt Janes and Matt Janes Construction's failure to pass on payments received to subcontractors and suppliers constitutes the intentional tort of conversion, pursuant to *Maynard Inv. Co., Inc. v. McCann*, 77 Wn.2d 616 (1970) and [*Washington*] *v. Joy*, 121 Wn.2d 333 (1993).  (Conclusion of Law No. 10).

8.  The amount converted was concurrent with and not additional to the breach of contract damages laid out above.  (Conclusion of Law No. 11).

This Court finds that the State Court Judgment established that Mr. Janes failed to pay subcontractors or suppliers, and that in doing so, he was substantially certain that those subcontractors would file liens on the Masons' home.  Those subcontractors did in fact file liens, causing injury to the Masons.  Mr. Janes's knowledge of the Masons' lien rights and his substantial certainty that his conduct would violate those lien rights is sufficient to prove that the injury to the Masons was willful.

In addition, the state court found that Mr. Janes's failure to pay subcontractors or suppliers constituted the intentional tort of conversion, as described in *McCann*[24] and *Joy*.[25]  In *Joy*, the defendant was found guilty of embezzlement based on a violation of Revised Code of Washington § 9A.56.020, which defines "theft" to mean "[t]o wrongfully obtain or *exert unauthorized control over the property* or services *of another* or the value thereof, with intent to deprive him of such

---

[24]  *Maynard Inv. Co., Inc. v. McCann*, 465 P.2d 657 (Wash. 1970).

[25]  *Washington v. Joy*, 851 P.2d 654 (Wash. 1993).

property or services."[26]  "Exerts unauthorized control" is defined in the statute to mean:

> Having any property or services in one's possession, custody or control as . . . [a] person authorized by agreement or competent authority to take or hold such possession, custody, or control, to secrete, withhold, or appropriate the same to his or her own use or to the use of any person other than the true owner or person entitled thereto . . .[27]

The court in *Joy* went on to conclude that a contractor who was given funds pursuant to an agreement to purchase construction materials by a homeowner, but then failed to use the funds for that purpose and appropriated the funds to his own use, could be guilty of embezzlement or theft under the statute.[28]

The state court, by citing to *McCann* and *Joy*, found that Mr. Janes's actions met the requirements of the conversion statute.  It is therefore established for purposes of this adversary proceeding that Mr. Janes exerted unauthorized control over property of the Masons with the intent to deprive them of such property.  This was not an innocent or technical conversion, but an intentional tort as required under *In re Longley* and *Davis*.  The finding that Mr. Janes intended to injure the Masons by depriving them of property is sufficient to show that his failure to pay subcontractors was also malicious under §523(a)(6).  Because intent was a crucial element with respect to the conversion claim, Mr. Janes had the incentive to fully litigate this issue before the state court.[29]  This Court concludes that the findings in the State Court Judgment establish that Mr.

---

[26]  *Id.* at 656.

[27]  *Id.* at 658 (citing Wash. Rev. Code § 9A.56.010(7)(b), now codified at § 9A.56.010(19)(b)(2005)).

[28]  The court's conclusion did not rest on any fiduciary duty placed on the contractor by statute, but was instead based on restrictions on the use of the funds by the contractor found in the agreements between the homeowners and the contractor.  *See id.* at 659.

[29]  *See In re Shore*, 317 B.R. at 543.

Janes's failure to pay subcontractors was both willful and malicious.  Therefore, the Court finds that the debt of Mr. Janes to the Masons for actual damages of $10,608 is nondischargeable under § 523(a)(6).

The Masons also allege that the Janes committed defalcation in their capacity as fiduciaries or embezzlement when they received money for the specific purpose of paying subcontractors but failed to pay them.  Having found the actual damages stemming from the breach of contract and conversion claims to be nondischargeable under § 523(a)(6), the Court need not address dischargeability of those damages under § 523(a)(4).

*Treble Damages and Attorney Fees*

Under Washington law, a contractor is to give the notice required under Revised Code of Washington § 18.27.114 to a client prior to starting work on a construction project, and failure to do so is an infraction of the Contractor Registration Act.[30]  An infraction of the Contractor Registration Act is deemed to affect the public interest, and also constitutes a violation of Revised Code of Washington § 19.86, the Washington Consumer Protection Act.[31]  A violation of the Consumer Protection Act allows "any person who is injured in his or her business or property" by a violation of that act to bring a civil action to recover actual damages as well as costs and attorney's fees.[32]  Plaintiffs are also entitled, at the discretion of the trial court, to recover increased damages not to exceed three times the actual damages sustained, with the caveat that the increased damage

---

[30]  Wash. Rev. Code § 18.27.114 (2005).

[31]  *Id*. § 18.27.350.

[32]  *Id.* § 19.86.090.

15

award may not exceed $10,000 for a violation of Revised Code of Washington § 19.86.020.[33]

Revised Code of Washington § 19.86.020 provides that "[u]nfair methods of competition and unfair

or deceptive acts or practices in the conduct of any trade or commerce are hereby declared

unlawful."[34]

     The Washington state court found that when Mr. Janes failed to give the statutorily required

notice to the Masons he violated the Washington Consumer Protection Act, Revised Code of

Washington § 19.86. Pursuant to this violation, the court used its discretion under Revised Code of

Washington § 19.86.090 to award the maximum $10,000 in additional damages as well as attorney

fees and costs allowed under that statute.  The Masons claim that the award of additional damages

and attorney fees and costs is nondischargeable as a matter of law under §§ 523(a)(2)(A) and

(a)(4).[35]

     i.  *§ 523(a)(2)(A)*

     Section 523(a)(2)(A) provides:

     (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title
     does not discharge an individual debtor from any debt–

---

[33] *Id.*

[34] *Id*. § 19.86.020.

[35] In *Stokes v. Ferris*, the bankruptcy court found that additional punitive damages and attorney fees awarded pursuant to the Texas Deceptive Trade Practices–Consumer Protection Act "flowed from the willfulness and/or malice of Defendant."  *Stokes v. Ferris*, 150 B.R. 388, 390 (W.D. Tex. 1992).  The district court found that this was sufficient to find that the additional damages and attorney fees were nondischargeable along with the underlying debt pursuant to § 523(a)(6).  *Id.* at 392.  In the case at bar, additional damages and attorney fees and costs were awarded as a result of the failure to give the required notice to the Masons, and did not flow from the conduct which this Court has found to be willful and malicious under § 523(a)(6).  Therefore, summary judgment on the dischargeability of these debts under § 523(a)(6) is inappropriate.

>    (2) for money, property, services, or an extension, renewal, or
>    refinancing of credit, to the extent obtained by–
>
>>    (A) false pretenses, a false representation, or actual
>>    fraud, other than a statement respecting the debtor's
>>    or an insider's financial condition;

In *Cohen v. De La Cruz*, the United States Supreme Court held that "§ 523 prevents the discharge of <u>all</u> liability arising from fraud."[36]  This includes both punitive and compensatory damages, as well as statutory penalties such as treble damages and attorney fees and costs.  As the Court noted, "[o]nce it is established that specific money or property has been obtained by fraud . . . "any debt" arising therefrom is excepted from discharge."[37]  Therefore, if the Court finds that the debt to the Masons was incurred by fraud under § 523(a)(2)(A), then the entire amount of the State Court Judgment will be nondischargeable.

The United States Court of Appeals for the Tenth Circuit has ruled that a creditor must establish each of the following elements by a preponderance of the evidence in order to prevail under § 523(a)(2)(A):

(1)    a representation was made by the debtor;

(2)    the representation was false;

(3)    the representation was made with the intent to deceive the creditor;

(4)    the creditor relied upon the representation;

(5)    such reliance was reasonable; and

(6)    as a result of such reliance, the creditor suffered loss.[38]

---

[36]  523 U.S. 213, 215 (1998) (emphasis added).

[37]  *Id.* at 218.

[38]  *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir. 1996); *Bank of Commerce v. Hoyt (In re Hoyt)*, 277 B.R. 121, 130–31 (Bankr. N.D. Okla. 2002).

17

The United States Supreme Court has held that the reliance standard to be used is the less stringent subjective standard of "justifiable" reliance, rather than the objective standard of "reasonable" reliance.[39]  Unless each of these items are established by a preponderance of the evidence, the debt is dischargeable.

### False Representation

In *In re Young*, the court found that a debtor-attorney's failure to give certain written disclosures required by statute constituted a "false representation" or "false pretenses" under § 523(a)(2)(A).[40]  As a contractor entering an agreement with the Masons for construction services, Mr. Janes was obligated by Revised Code of Washington § 18.27.114 to provide the Masons with a disclosure statement outlining actions they could take to protect themselves under the contract. The state court found that Mr. Janes failed to provide this disclosure statement to the Masons.  This failure constitutes a "false representation" or a "false pretense" under § 523(a)(2)(A).

### Intent to Deceive

The next element of § 523(a)(2)(A) is Mr. Janes's alleged intent to deceive the Masons when he failed to provide them with the statutorily required notice.  Under § 523(a)(2)(A), "the debtor's intent to deceive the creditor in making false representations to the creditor, 'may be inferred from the 'totality of the circumstances,' or from a 'knowingly made false statement.'"[41] In addition, "[t]his section includes only those frauds involving moral turpitude or intentional wrong, and does not

---

[39] *Field v. Mans*, 516 U.S. 59, 74–75 (1995).

[40] *In re Young*, 91 F.3d at 1374.

[41] *In re Young*, 91 F.3d at 1375 (citations omitted).

18

extend to fraud implied in law which may arise in the absence of bad faith or immorality."[42]  In prior rulings, this Court has required a determination of the subjective intent of the debtor in order to find an intent to deceive.[43]

The Washington state court awarded the Masons treble damages and attorney fees and costs on the basis of a violation of Revised Code of Washington § 19.86.020.[44]  That statute provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby unlawful."[45]  The question is whether this finding precludes further litigation regarding Mr. Janes's intent to deceive when he failed to provide the notice required under Washington law.

Other courts have faced a similar issue.  In *In re Rebarchek*, the plaintiff moved for summary judgment on the issue of dischargeability, relying upon a state court judgment.[46]  The state court judgment was based on a violation of the Ohio Consumer Sales Practices Act, and the plaintiff was also given additional damages and attorney fees under the Ohio Consumer Protection Act.  The bankruptcy court found that the issues decided in the state court to establish statutory liability were

---

[42]  *Driggs v. Black (In re Black)*, 787 F.2d 503, 505 (10th Cir. 1986), *overruled on other grounds by Grogan v. Garner*, 498 U.S. 279 (1991).

[43]  *Bank of Commerce v. Hoyt (In re Hoyt)*, 277 B.R. 121, 133 (Bankr. N.D. Okla. 2002); *AT&T v. Herrig (In re Herrig)*, 217 B.R. 891, 896–98 (Bankr. N.D. Okla. 1998).

[44]  *See Plaintiff's Ex. A* (Conclusion of Law No. 8).  Although the State Court Judgment does not specifically reference Revised Code of Washington § 19.86.020, it does indicate that violations of the Consumer Protection Act are limited to a maximum of $10,000.  That limitation only applies to violations of Revised Code of Washington § 19.86.020.  *See* Wash. Rev. Code § 19.86.090.

[45]  Wash. Rev. Code § 19.86.020.

[46]  *Longbrake v. Rebarchek (In re Rebarchek)*, 293 B.R. 400 (Bankr. N.D. Ohio 2002).

19

similar but not identical to the issues necessary to prove a cause of action under § 523(a)(2)(A).[47]

The following portion of the opinion is instructive:

> For purposes of § 523(a)(2)(A), a false representation may be said to occur when a debtor, acting without the intent to materially perform his or her agreed upon obligation, knows or should have known that his or her representation would induce another to advance money, goods or services. *See Bernard Lumber Co. v. Patrick (In re Patrick),* 265 B.R. 913, 916 (Bankr.N.D.Ohio 2001) By comparison, under the Ohio Consumer Sales Practices Act, which applies to solely "suppliers" and "consumers," <u>a violation occurs when a supplier commits any unfair or deceptive act or practice in connection with a consumer transaction</u>. O.R.C. § 1345.02(A). As it pertains to this requirement, however, <u>no actual showing of a supplier's wrongful intent is required; instead, the consumer must simply show that the supplier did or said something that had "the likelihood of inducing in the mind of the consumer a belief that is not in accord with the facts."</u> *Richards v. Beechmont Volvo,* 127 Ohio App.3d 188, 190, 711 N.E.2d 1088 (1998). Thus, as it pertains to these two standards, it is clear that, although there are similarities, they are not necessarily identical. As such, a debtor's violation of the Ohio Consumer Protection Act, without more, does not require that the collateral estoppel doctrine be applied to a creditor's cause of action under § 523(a)(2)(A).[48]

Absent identity of issues between the statutory violation and the requirements for fraud under § 523(a)(2)(A), the court concluded that the doctrine of collateral estoppel could not be applied. The court in *Rebarchek* went on to grant summary judgment for the plaintiff under § 523(a)(2)(A), but that decision was based on additional findings and conclusions made by the state court, and was not based simply on its conclusion that the state's consumer protection act had been violated.

Under Washington statutes, Mr. Janes's failure to give the required statutory notice constituted an "unfair method of competition" or an "unfair or deceptive act or practice" in the conduct of trade.[49] This is akin to a "fraud implied in law" due to a failure to give the required

---

[47] *Id.* at 408.

[48] *Id.* (emphasis added).

[49] Wash. Rev. Code § 19.86.020.

notice, but does not rise to a finding of subjective intent or intentional wrong which is required to find such a debt nondischargeable under § 523(a)(2)(A).  The subjective intent of the debtor in failing to provide the notice is a matter of factual dispute between the parties which remains for resolution by this Court.  Having found a material question of fact as Mr. Jane's intent to deceive, the Court need not consider at this time whether any of the other elements under § 523(a)(2)(A) are present. Summary judgment on the dischargeability of the $10,000 additional damages as well as the attorney fees and costs under § 523(a)(2)(A) is denied.

ii. *§ 523(a)(4)*

In the alternative, the Masons argue that Mr. Janes committed fraud in his capacity as a fiduciary when he failed to give them the required notice before beginning construction.[50]  As a result, the argument goes, the additional damages and attorney fees and costs should be found nondischargeable under § 523(a)(4) of the Bankruptcy Code, which provides:

(a)      A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title  does not discharge an individual debtor from any debt–

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;[51]

Two elements must be established to except a debt from discharge under § 523(a)(4): (1) there must

---

[50]  Although the Court has not considered whether the actual damages are excepted from discharge under § 523(a)(4) for embezzlement, it finds that the additional damages, attorney fees and costs were awarded pursuant to the failure to provide the required statutory notice, and do not flow from any alleged embezzlement.  Therefore, even if the Court found the actual damages nondischargeable under § 523(a)(4) for embezzlement, it would not find the additional damages, attorney fees and costs to be excepted from discharge under that section based solely on the claim of embezzlement. *See supra* note 35.

[51]  § 523(a)(4).

21

be a showing of fraud and (2) the debtor must have been acting in a fiduciary capacity.[52]  The

existence of a fiduciary relationship is a threshold issue under § 523(a)(4).[53]  If there is no fiduciary

relationship, the inquiry ends, and the debt is dischargeable under this section.  The United States

Court of Appeals for the Tenth Circuit has taken a very narrow view of the concept of fiduciary duty

under § 523(a)(4), holding that

> . . . an express or technical trust must be present for a fiduciary relationship to exist
> under § 523(a)(4). . . . Neither a general fiduciary duty of confidence, trust, loyalty,
> and good faith, . . . nor an inequality between the parties' knowledge or bargaining
> power is sufficient to establish a fiduciary relationship for purposes of
> dischargeability.  "Further, the fiduciary relationship must be shown to exist prior to
> the creation of the debt in controversy."[54]

The question of whether a relationship between parties is fiduciary in nature for purposes of §

523(a)(4) requires consideration of state as well as federal law.[55]

The Masons allege that Mr. Janes owed them a fiduciary duty as a contractor.  This

allegation is based on two cases cited in the State Court Judgment: *Maynard Investment Co. v.*

---

[52]  The Masons have not alleged that the Janes committed larceny under § 523(a)(4).  The Masons' allegations of defalcation in the capacity as a fiduciary and embezzlement are related to Mr. Janes's failure to pay subcontractors.  The actual damages awarded for failure to pay subcontractors were found to be nondischargeable under § 523(a)(6) and will not be addressed under §523(a)(4).

[53]  *Smolen v. Hatley (In re Hatley)*, 227 B.R. 753, 756 (Bankr. N.D. Okla. 1998), *aff'd*, 227 B.R. 757 (10th Cir. BAP 1998); *In re Hogue*, 221 B.R. 786 (Bankr. N.D. Okla. 1998).

[54]  *In re Young*, 91 F.3d 1367, 1371-72 (10th Cir. 1996) (citations omitted) (quoting *In re Romero*, 535 F.2d. 618, 621 (10th Cir. 1976)).

[55]  *Id.* at 1371; *see also In re Black*, 787 at 506; *In re Turner*, 134 B.R. 646, 649 (Bankr. N.D. Okla. 1991).

*McCann* and *Washington v. Joy*.[56]  The court in *McCann* found an agency relationship based on

Revised Code of Washington § 9.54.080, <u>which has since been repealed</u>:

> Every person having entered into a contract to supply any labor or materials for the value or price of which any lien might lawfully be filed upon the property of another, who shall receive the full price or consideration thereof, or the amount of any account stated thereon, *shall be deemed within the meaning of RCW 9.54.010(3), to receive the same as the agent* of the party with whom such contract was made, his successor or assign, for the purpose of paying all claims for labor and materials supplied.[57]

Revised Code of Washington § 9A.56.010 defines "exerts unauthorized control" to mean, in part:

> Having any property or services in one's possession, custody or control as *bailee, factor, lessee, pledgee, renter, servant, attorney, agent, employee, trustee, executor, administrator, guardian, or officer of any person, estate, association, or corporation, or as a public officer, or person authorized by agreement or competent authority* to take or hold such possession, custody, or control, to secrete, withhold, or appropriate the same to his or her own use or to the use of any person other than the true owner or person entitled thereto.[58]

*Joy* recognized that Revised Code of Washington § 9.54.080 had been repealed and concluded that

Washington law no longer deems a contractor to satisfy one of the relationships required to prove

"exerts unauthorized control."[59]  Under the current statutory framework, any such relationship must

now be proved by the creditor.[60]  In *Joy*, the court pointed out that a trust or agency relationship is

not a prerequisite to making a finding of embezzlement, nor are parties precluded from having a trust

---

[56]  *Maynard Investment Co. v. McCann*, 465 P.2d 657 (Wash. 1970); *Washington v. Joy*, 851 P.2d 654 (Wash. 1993).

[57]  *McCann*, 465 P.2d at 661 (citing Wash. Rev. Code § 9.54.080 (repealed)).

[58]  Wash. Rev. Code § 9A.56.010(19)(b) (previously codified as Wash. Rev. Code § 9.54.010(3)) (emphasis added).

[59]  *Joy*, 851 P.2d at 658.

[60]  *Id.*

23

or agency relationship simply because their relationship is based on a construction contract.[61]

With regard to the obligation of Mr. Janes to provide the notice to the Masons, that duty is based on a statutory requirement, with concomitant statutory remedies for its violation. Whether or not Mr. Janes had fiduciary duties to the Masons <u>with respect to the obligation to give the notice pursuant to Revised Code of Washington § 18.27.114</u> was not addressed in the State Court Judgment, and remains an issue of fact which remains to be resolved by this Court.[62] Therefore, summary judgment on the dischargeability of the $10,000 additional damages as well as attorney fees and costs under § 523(a)(4) is therefore denied.

### Conclusion

The Motion for Summary Judgment filed by Henry B. Mason, Jr. and Tami L. Mason, Plaintiffs herein, is granted in part. Specifically, the debt of $10,608 for actual damages from breach of contract and intentional conversion is found to be nondischargeable pursuant to 11 U.S.C. § 523(a)(6). The Court finds that issues of material fact remain with regard to the Plaintiff's remaining claims, and summary judgment on those claims is denied. The Objection and Cross-Motion for Summary Judgment filed by Joseph M. Janes and Shelley Raye Janes, Defendants herein, is denied.

---

[61] *Id.* at 660.

[62] The Court does not address the nature of any trust or fiduciary relationship which the state court may have found with respect to the embezzlement claim. The debt for actual damages based on the embezzlement claim has been found nondischargeable pursuant to § 523(a)(6) *supra*, and is not discussed here.

A separate judgment consistent with this Memorandum Opinion is issued concurrently herewith.

Dated this 26th day of June, 2006.

BY THE COURT:

TERRENCE L. MICHAEL, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT

#4604 v4 - 06-1053 Mason v Janes summary judgment opinion.wpd